# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Diaz, et al., | No. CV-18-04240-PHX-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Health Plan Intermediaries Holdings LLC, et al., | |
| Defendants. | |

Before the Court is Defendant Health Plan Intermediaries Holdings, LLC's ("HPIH") Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 17.) For the reasons that follow, the Court finds that the motion should be granted.[1]

**I.   BACKGROUND**

HPIH is a Delaware limited liability company that maintains its principal place of business in Tampa, Florida. (Doc. 17-1 at 3.) It is a developer, distributor, and virtual administrator of cloud-based individual and family health insurance plans and supplemental products. (Id. at 2-3.) HPIH markets its product to individuals through its own internal distribution network and an external network of non-owned, third-party licensed agents. (Doc. 29 at 2.) As part of this business, HPIH maintains an informative business website. (Doc. 17-1 at 3-4.) This website is generally available worldwide, including in Arizona. (Id. at 4.) HPIH marketed, sold and administered short-term medical

---

[1] HPIH requested oral argument. (Doc. 17 at 1.) However, the parties have had the opportunity to submit briefing, and oral argument will not aid the Court's decision. Accordingly, HPIH's request is denied. See L.R. Civ. 7.2(f).

policies to residents of Arizona through this website and an associated call center. (Doc. 29 at 2.) Through its online presence, HPIH also provided services to Arizona customers, such as updating premium information, downloading insurance documents, providing ID cards, canceling policies, and answering questions and offering assistance through a "member portal." (Id. at 3-4.) Additionally, when HPIH enrolled members and sold them insurance, it collected all amounts due in connection with the plan, including fees, premiums and third-party commissions. (Id. at 3.) HPIH would then remit the "risk premiums" to the insurance carriers. (Id.)

HPIH is registered as a foreign corporation authorized to do business in the state of Arizona and maintains a designated registered agent in Arizona to accept service of process. (Doc. 17-1 at 3.) Although it does not maintain corporate offices, bank accounts, or employees in Arizona, it does earn revenue here. (Id.) In the first three quarters of fiscal year 2018, HPIH collected $4.9 million in revenue from Arizona, which was 3.5% of HPIH's total revenue. (Id.) HPIH additionally promoted its business within Arizona by entering into an exclusive agreement with the Med-Sense Guaranteed Association ("Med-Sense"), which authorized HPIH to charge and collect fees for membership in the association. (Doc. 29 at 3.) The primary purpose of obtaining authorization to enroll new members in Med-Sense was to qualify HPIH under Arizona law to sell mass-marketed health insurance policies, including short-term medical policies, to Med-Sense members. (Id.)

Plaintiffs David and Marisia Diaz (collectively, "Plaintiffs") are residents of Arizona. (Id. at 1.) They allege that in late 2016 they began researching health insurance options online. (Id. at 4.) After Marisia Diaz ("Marisia") provided information to HPIH online, Defendant Linda Thiel contacted Marisia by phone. (Id.) Thiel was a licensed insurance producer employed by American Service Insurance Agency, Inc. ("ASIA"), a wholly-owned subsidiary of HPIH. (Id. at 2.) While a subsidiary of HPIH, ASIA is an entirely separate and distinct corporate entity from HPIH. (Doc. 17-1 at 4.)

Plaintiffs allege that Thiel advised Marisia that a Life Shield STM insurance plan

was suited for Plaintiffs. (Doc. 29 at 5.) In describing the plan to Marisia, Thiel told her that Plaintiffs need only choose the amount of their deductible and aggregate coverage limit, and that after paying the deductible, all medical expenses would be paid. (Id.) Plaintiffs relied on Thiel's representations and purchased the Life Shield STM plan with effective dates of January 1, 2017, through June 30, 2017. (Id.) When that policy ended, Thiel enrolled Plaintiffs in an insurance plan with Defendant Everest Reinsurance Company ("Everest") with effective dates of July 1, 2017, through September 30, 2017. (Id.) Everest is a Delaware corporation with its principal place of business in New Jersey. (Doc. 1 at 3.) The policy was a mass-marketed health insurance policy. (Doc. 29 at 6.) Plaintiffs again chose the same terms as their previous policy, with a $7,500 deductible and an aggregate limit up to $750,000. (Id. at 5.) Thiel did not advise Marisia that the Everest policy had strict limitations on coverage and benefits and advised Marisia that the Everest policy covered all medical expenses up to $750,000 with a $7,500 deductible. (Id.)

Plaintiffs further allege that they "were unknowingly enrolled as members of the Med-Sense Guaranteed Association for an undisclosed fee by [HPIH] as the 'exclusive agent' of Med-Sense Guaranteed Association for the enrollment of new members." (Id. at 6.) Plaintiffs contend they derived no benefits from their membership in Med-Sense and the sole purpose of enrolling them in Med-Sense was to permit HPIH to sell to Plaintiffs Everest's mass-marketed health insurance. (Id.)

On or about August 18, 2017, David Diaz ("David") suffered a major heart attack requiring immediate hospitalization and open-heart surgery. (Id. at 5.) Everest did not pay the medical expenses incurred as a result of the heart attack and surgery. (Id. at 6.) On or about February 12, 2018, Marisia called HPIH about the unpaid bills and was informed that none of the claims were covered by the Everest policy. (Id.) Marisia then called Thiel, who disclosed to Marisia for the first time that the Everest plan had "severely limited benefits." (Id.) Plaintiffs now owe $250,000 in unpaid medical bills. (Id.)

On August 22, 2018, Plaintiffs filed suit against HPIH, Thiel, and Everest in Arizona state court. (Doc. 1-1.) HPIH and Thiel removed to district court on the basis of diversity

jurisdiction. (Doc. 1.) HPIH then filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 17.)

Prior to the Court ruling on the motion to dismiss, the Court held a Rule 16 scheduling conference, at which Plaintiffs asked for leave to amend their complaint. (Doc. 27.) The Court granted Plaintiffs leave to amend and ordered that HPIH could file a supplemental brief supporting its pending motion to dismiss, should the new complaint raise additional issues. (Doc. 28.) On March 1, 2019, Plaintiffs filed their amended complaint. (Doc. 29.) Plaintiffs allege that HPIH and its agent, Thiel, marketed and sold the Everest insurance policy to Plaintiffs through the use of deception, fraud, false pretense, misrepresentation, and suppression and concealment of material facts. (Id. at 7.) They bring claims for consumer fraud and negligent misrepresentation against HPIH and Thiel, and for breach of contract against Everest. (Id. at 7-10.) On March 20, HPIH filed a notice stating that it did not believe supplemental briefing was necessary. (Doc. 32.) Accordingly, the pending motion has been fully briefed and is ripe for review.

HPIH argues that the Court does not have personal jurisdiction over HPIH in this matter because (1) HPIH is not "at-home" in Arizona such that general jurisdiction exists, (2) specific jurisdiction is lacking because Plaintiffs' claims does not arise out of or relate to HPIH's activities in Arizona; and (3) HPIH did not exercise the requisite degree of control over Thiel's employer, ASIA, to create alter-ego jurisdiction. (See generally Doc. 17.) In their response, Plaintiffs concede that the Court does not have general jurisdiction over HPIH and that there is no basis for alter-ego jurisdiction. (Doc. 21 at 3.) Rather, Plaintiffs argue the Court has specific jurisdiction over HPIH because Plaintiffs' claims arise out of and relate to HPIH's activities in the state. (Id. at 7-8.) Therefore, the Court only considers the question of specific jurisdiction here.

**II.   LEGAL STANDARD**

Federal courts generally apply state law in determining the bounds of their jurisdiction over a party. Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting Daimler AG v. Bauman, 571 U.S. 117, 125 (2014)). "Arizona law permits the

exercise of personal jurisdiction to the extent permitted under the United States Constitution." Id. (citing Ariz. R. Civ. P. 4.2(a)). Therefore, the bounds of personal jurisdiction under Arizona state law follow the Due Process Clause of the Fourteenth Amendment. Id.

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). "Minimum contacts are shown if the defendant has 'continuous and systematic general business contacts' with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." Morrill, 873 F.3d at 1142 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-02 (9th Cir. 2004)).

Courts are directed to apply a three-part test in analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." Id. (citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

In analyzing the first prong, courts apply the purposeful direction, rather than

purposeful availment, test where the claims arise from alleged tortious conduct. Axiom Foods, Inc., 874 F.3d at 1069 (citing Schwarzenegger, 374 F.3d at 802). "The defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id. (quoting Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012)). The court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." Id. at 1070 (citing Walden v. Fiore, 571 U.S. 277, 289 (2014)).

In determining whether a claim arises out of or relates to the defendant's forum-related activities, the Ninth Circuit Court of Appeals applies a "but-for" test. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001)). The plaintiff "must show that he would not have suffered an injury 'but for' [the defendant's] forum-related conduct." Id. However, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Walden, 571 U.S. at 284 (quoting Burger King Corp., 471 U.S. at 475).

Lastly, the court considers the reasonableness of exercising jurisdiction. Menken, 503 F.3d at 1058. The court considers:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Id.

Where, as here, the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" in its pleadings and affidavits. Schwarzenegger, 374 F.3d at 800 (quoting Sher, 911 F.2d at 1361). The plaintiff may not rely solely on the allegations in its complaint, but "uncontroverted allegations in the complaint must be taken as true." Id. (citing Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.,

- 6 -

1  551 F.2d 784, 787 (9th Cir. 1977); AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586,
2  588 (9th Cir. 1996)).

### III. ANALYSIS

HPIH does not challenge the facts as alleged in Plaintiffs' amended complaint; therefore, the Court accepts them as true. Applying the first prong of the specific-jurisdiction test to the facts here, the Court finds that HPIH purposefully directed its conduct to Arizona. HPIH appears to concede as much when it states that it "does not dispute that it purposely avails itself of the privilege of doing business in Arizona." (Doc. 22 at 3.) HPIH is registered to do business and maintains a registered agent in Arizona. (Doc. 17-1 at 3.) It collects significant revenue in Arizona related to its business of developing, distributing, and administering insurance plans in the state. (Id.; Doc. 29 at 2.) With its involvement in the marketing and administration of health insurance plans in Arizona, it is foreseeable that one of HPIH's customers in Arizona might suffer the type of harm that Plaintiffs allege.

The critical question, then, is whether Plaintiffs' claims arise out of or relate to HPIH's contacts with Arizona. Plaintiffs' two claims against HPIH for consumer fraud and negligent misrepresentation are based on alleged misrepresentations made by Thiel, who is not an employee of HPIH. HPIH argues that although Plaintiffs may allege that HPIH is liable for Thiel's misrepresentations because Thiel was acting as HPIH's agent, personal jurisdiction cannot be based on an agency relationship. (Id. at 5.) Because HPIH did not employee Thiel, who made the misrepresentations, "there is no nexus between [HPIH's in-state activities] and Plaintiffs' claims based upon the alleged oral misrepresentations of an insurance salesperson." (Id. at 4.)

Plaintiffs, in response, do not argue that the alleged agency relationship between Thiel and HPIH supports personal jurisdiction here; rather they argue that HPIH's own contacts with Arizona and Plaintiffs are sufficient to support specific jurisdiction. (Doc. 21 at 4.) They allege that "[n]one of what happened to [them] would have occurred without HPIH's forum related activities." (Id. at 7.)

The Court finds that HPIH advocates too narrow an understanding of what it means for a claim to "arise out of or relate to" in-state activities. HPIH appears to argue that if a non-resident defendant did not itself commit the final act leading to a plaintiff's injury, a court cannot exercise specific personal jurisdiction over the defendant no matter the nature or extent of the defendant's in-state contacts with the plaintiff. That is not the standard. In the Ninth Circuit, the test is whether, but for HPIH's in-state contacts, Plaintiffs claims against the Defendants would have arisen. See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). The Tenth Circuit Court of Appeals has clarified the but-for test to mean that "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." Newsome v. Gallacher, 722 F.3d 1257, 1269-70 (10th Cir. 2013) (quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1078 (10th Cir. 2008)). Thus, a non-resident defendant's actions need only be a necessary component in the causal chain that resulted in the plaintiff's injury.

Here, the injury is Plaintiffs' enrollment in an insurance plan that did not cover David's medical treatment. It is difficult to see how Plaintiffs' claims would not arise out of or relate to HPIH's in-state contacts with Plaintiffs, *if* HPIH provided Plaintiffs the same services that Plaintiffs allege HPIH provided customers in the state of Arizona generally. If HPIH connected Plaintiffs with Thiel, a third-party licensed agent, and then administered the policy sold by Thiel through its online portal, then Plaintiffs' alleged injury would arise out of or relate to HPIH's contacts with Plaintiffs. This is particularly true if HPIH enrolled Plaintiffs in Med-Sense without Plaintiffs' knowledge or authorization as a result of Thiel's misrepresentations. However, the amended complaint never explicitly provides such facts.

The only specific contacts between HPIH and Plaintiffs alleged in the amended complaint are: (1) Marisia provided information to HPIH online prior to being contacted by Thiel; (2) Marisia called HPIH after Everest failed to pay David's medical bills and was informed the claims were not covered; and (3) HPIH enrolled Plaintiffs in Med-Sense without Plaintiffs' knowledge or authorization. (Doc. 29 at 4, 6.) While the Court could infer from these facts that HPIH was responsible for connecting Plaintiffs to Thiel and for

later administering the plan for Plaintiffs, including enrolling Plaintiffs in Med-Sense, the Court will not assume facts not alleged in the amended complaint or otherwise supported by affidavit. See Ranasinghe v. Popolizio, No. CV-14-00369-PHX-ROS, 2015 WL 12942499, at *3 (D. Ariz. Feb. 17, 2015) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007), aff'd, 688 F. App'x 469 (9th Cir. 2017)). HPIH had some contacts with Plaintiffs, but it remains obscure what role those contacts played in Plaintiffs' alleged injury. Thus, the Court cannot find, based on the amended complaint, that it has specific jurisdiction over HPIH.

Because Plaintiffs have failed to carry their burden on the first two prongs of the specific-jurisdiction test, the Court will not consider whether the exercise of personal jurisdiction here is reasonable.

**IV.   CONCLUSION**

Based on the foregoing, the Court finds that Plaintiffs have not carried their burden to show that the Court may exercise specific personal jurisdiction over HPIH. However, sufficient facts to exercise personal jurisdiction over HPIH may be present if more clearly stated by Plaintiffs.

Accordingly,

**IT IS HEREBY ORDERED** granting HPIH's Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. 17).

**IT IS FURTHER ORDERED** dismissing Plaintiffs' amended complaint (Doc. 29) without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs shall file an amended complaint on or before **Friday, May 17, 2019**.

**Dated** this 15th day of April, 2019.

Honorable Stephen M. McNamee
Senior United States District Judge