**SURRANO LAW OFFICES**
Attorneys at Law

7114 E. Stetson Dr., Suite 300
Scottsdale, Arizona 85251
Phone: (602) 264-1077
Fax: (602) 264-2213

Charles J. Surrano III (007732) cjs@surranolawfirm.com
John N. Wilborn (013714) jnw@surranolawfirm.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Diaz and Marisia Diaz, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Health Plan Intermediaries Holdings, LLC, dba Health Insurance Innovations, a foreign corporation, and Everest Reinsurance Company, a foreign corporation, and Linda Thiel, authorized agent for the Defendants,<br><br>Defendants. | Case No.: CV-18-4240-PHX-SMM<br><br>**PLAINTIFFS' SECOND AMENDED COMPLAINT**<br>**(TORT; STATUTORY CONSUMER FRAUD; BREACH OF CONTRACT [REASONABLE EXPECTATIONS])** |

Plaintiffs, for their Second Amended Complaint herein set forth and allege as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1. That Plaintiffs David and Marisia Diaz ("Plaintiffs") were and so remain for all acts alleged herein, a marital community and residents of the State of Arizona.

1

2. That at all times mentioned herein, the Defendant Health Plan Intermediaries Holdings, LLC, dba Health Insurance Innovations (hereafter, "HII") was a foreign corporation involved in the development and sale of insurance products for contracted insurers through a network of third-party licensed insurance agents across the United States.

3. That at all times relevant HII was a developer, distributor and administrator of, *inter alia*, short term medical plans.

4. That HII marketed its products to individuals through its own internal distribution network, in addition to using an external network of non-owned third party licensed agents.

5. That HII had a wholly owned subsidiary known as American Service Insurance Agency, Inc. (also known as an LLC, hereafter referred to as "ASIA").

6. That ASIA was, at all relevant times, a Texas insurance brokerage.

7. That the Defendant, Linda Thiel, was at all relevant times a licensed insurance producer, employed by ASIA.

8. That ASIA was, in effect, a captive insurance broker for HII used to market insurance products for HII's financial benefit as part of HII's "internal distribution network."

9. That at all times relevant herein, HII was a Delaware corporation with its principal place of business in Tampa, Florida.

10. That the Defendant HII marketed short term medical policies to residents of the State of Arizona, and elsewhere, using an interactive website.

11. That HII sold and administered policies within the State of Arizona by use of an interactive website and call center.

12. That HII reaped substantial financial benefit from the sale and administration of short term medical policies in the State of Arizona.
13. That HII further allowed and promoted the conduct of its business within the State of Arizona by, in addition to the foregoing, entering into an exclusive agreement with an association known as the Med-Sense Guaranteed Association, authorizing HII to charge and collect fees for membership in the association, which it did.
14. That Plaintiffs purchased short term medical policies through Defendant Linda Thiel and HII's captive brokerage, ASIA.
15. That the type of insurance sold to Plaintiffs is known as "mass marketed health insurance".
16. That Arizona regulates the transaction of mass marketed health insurance (A.R.S. § 20-1661, *et seq.*).
17. That in order to obtain the privilege of selling such insurance in Arizona, HII had to comply with Arizona's specific statutory requirements for the marketing and sale of mass marketed health insurance.
18. That the primary purpose, therefore, of authorizing HII to enroll new members in Med-Sense was to qualify it to sell mass marketed insurance to the sponsoring group members, which HII did.
19. That when HII enrolled members in and sold them insurance, it received <u>all</u> amounts due in connection with the plan, including fees, premiums and third party commissions.
20. That when HII enrolled Plaintiffs it charged and collected from them all premiums and fees due.
21. That HII refers to these total collections as "premium equivalents".

22. That from the premium equivalents, HII would remit "risk premiums" to carriers.
23. That through its online presence in Arizona, HII provided services to Arizona customers, including updating premium information, downloading insurance documents, providing ID cards, canceling policies upon request, and answering questions and offering assistance through an online "member portal".
24. That HII provided these same services to Plaintiffs through the online portal.
25. That HII has been conducting its online business in Arizona consistently and continuously for years, earning many millions of dollars from its Arizona customers.
26. That HII created an online presence in Arizona which by utilizing an interactive website and automated payment process allowed it to offer Arizona residents, including Plaintiffs, one stop shopping for short term medical policies, and managing customer relations post sale, through its member portal, 24 hours a day, seven days a week.
27. That Plaintiffs utilized HII's interactive website and online "member portal" to, *inter alia*, answer questions and obtain insurance documents and information about their policies.
28. That HII registered as, and remains, a registered foreign corporation authorized to do business in Arizona, subject to service of process here.
29. That the Defendant Everest Reinsurance Company (hereafter, "Everest") was a foreign insurer licensed to transact and transacting the business of insurance in Arizona.
30. That at all times mentioned herein, the Defendant, Linda Thiel, was a licensed insurance agent, authorized to sell insurance through HII and on

behalf of Everest and others, through ASIA, a brokerage company wholly owned by HII.

31. That in late 2016, Plaintiffs began researching health insurance options online.

32. That Plaintiffs contacted HII through its online presence for the purpose of investigating health insurance options through it.

33. That HII connected Plaintiff, Marisia Diaz, with HII agent and Defendant herein, Linda Thiel.

34. That in discussing health insurance issues with the Diaz's, Defendant Thiel advised that she had a plan suited for them with "Life Shield STM".

35. That in describing the plan to Plaintiff, Marisia Diaz, Defendant Thiel told her that Plaintiffs need only choose the amount of their deductible and aggregate coverage limit; and that after paying the deductible, all medical expenses would be paid.

36. That Plaintiffs relied upon these representations and purchased insurance with Life Shield STM with effective dates of coverage from January 1, 2017 through June 30, 2017.

37. That Plaintiffs were never provided a copy of the policy with Life Shield STM.

38. That when the coverage under the Life Shield policy ended on June 30, 2017, Defendant Thiel enrolled Plaintiffs for "full" coverage with "Everest" with effective dates of coverage from July 1, 2017 through September 30, 2017.

39. That Plaintiffs opted for the same terms as applied to the Life Shield policy, a $7,500 deductible with aggregate limits up to $750,000.

40. That at no time prior to purchasing the Everest policy were Plaintiffs advised by Defendant Thiel or HII that there were strict limitations on coverage and benefits.

41. That, in fact, Defendant Thiel advised Plaintiff, Marisia Diaz, in July of 2017 that the Everest policy covered all medical expenses up to $750,000 with a $7,500 deductible, as she had before.

42. That on or about August 18, 2017, Plaintiff, David Diaz, suffered a major heart attack requiring immediate hospitalization and open heart surgery.

43. That the Everest policy was a "mass marketed health insurance policy" with substantial limitations on coverage and benefits. (*See*, A.R.S. §20-1661, *et seq.*)

44. That Plaintiffs were unknowingly enrolled as members of the Med-Sense Guaranteed Association for an undisclosed fee by HII as the "exclusive agent" of Med-Sense Guaranteed Association for the enrollment of new members.

45. That Defendant Thiel's misrepresentations and concealment caused and contributed to Plaintiffs' unwitting enrollment in the Med-Sense Guarantee Association.

46. That but for Defendant Thiel's misrepresentations and concealment, Plaintiffs would not have purchased the instant policies or enrolled in the Med-Sense Guarantee Association.

47. That because of the actions of HII through its active cyber presence in the State of Arizona, the Plaintiffs would never have connected with or purchased insurance through Defendant Thiel.

48. That, furthermore, HII's failure to provide policies through its interactive website, or a full and accurate description of the limited coverage purchased,

impeded Plaintiffs from canceling the policies before any expenses were incurred, which they would have done, provided they had such knowledge of the limited benefit coverage.

49. That upon information and belief, the primary purpose of authorizing HII to enroll new members was to qualify it to sell mass marketed health insurance pursuant to A.R.S. §20-1661, *et seq.*

50. That the Plaintiffs derived no benefits from the Med-Sense Guaranteed Association.

51. That upon information and belief, the charges for the insurance provided to Plaintiffs, and others, are unreasonable in relation to the benefits provided by the insurance and constitute an unreasonable insurance practice. (*See,* A.R.S. §20-1163).

52. That the medical expenses incurred by reason of Plaintiff, David Diaz's heart attack have not been paid by Everest.

53. That on or about February 12, 2018, Plaintiff, Marisia Diaz, called HII to find out why her husband's bills were not paid and was informed that none of the claims were covered.

54. That Plaintiff, Marisia Diaz, thereafter, asked Defendant, Linda Thiel, why the bills had not been paid, who then disclosed to Ms. Diaz for the first time that the plan the Plaintiffs had purchased had severely limited benefits.

55. That to date, Plaintiffs are indebted with over $250,000 of unpaid medical bills.

56. That but for the mutual representations and omissions of HII and its agent, Defendant, Linda Thiel, Plaintiffs would not have purchased such limited benefits insurance.

57. That HII and its agent, Defendant, Linda Thiel, marketed and sold this insurance to Plaintiffs through use of deception, fraud, false pretense, misrepresentation, and suppression and concealment of material facts with the intent that Plaintiffs rely upon it.

58. That the deceptive acts and omissions as aforesaid, included characterizing the coverage as complete, up to the maximum aggregate of $750,000 after payment of the deductible of $7,500.

59. That the stringently limited benefits were never described or disclosed to Plaintiffs before purchasing the policy or before Mr. Diaz's claim.

60. That what was described as the maximum policy benefit ($750,000), which Plaintiffs paid for, is illusory in that the scheduled benefits and exclusions are so constrictive and severe as to make it unattainable.

61. That Plaintiffs have been damaged by the actions of these Defendants as aforesaid.

**COUNT I: CONSUMER FRAUD (A.R.S. § 44-1521, *et seq.*)**
**(THIEL AND HII)**

62. That Plaintiffs hereby repeat and re-allege each and every allegation of the foregoing Complaint as though more fully set forth herein.

63. That the actions and omissions as aforesaid constitute an unlawful practice giving rise to a private cause of action under A.R.S. § 44-1522.

64. That at all relevant times, the Defendants Thiel and HII were engaged in a joint venture.[1]

65. That the Defendants' deceptions and omissions as aforesaid have caused Plaintiffs actual damages in the amount owed in unpaid medical bills for

---

[1] As contemplated by *Farr v. TransAmerica*, 699 P.2d 376 (1984); *Sparks v. Republic National Life Ins. Co.,* 647, P.2d (12) (1982).

which they are now financially responsible and premiums they paid for the insurance deceptively sold to them.

66. That the deceptive practices addressed herein were done with a reckless disregard for the substantial harm to be occasioned to Plaintiffs, animated by greed and wantonness, thereby further entitling the Plaintiffs to an award of punitive damages.

67. That, furthermore, Defendant HII has exhibited a pattern of similar deceptive practices evidencing an evil mind and further warranting an award of punitive damages.

## COUNT II: NEGLIGENT MISREPRESENTATION
### (THIEL AND HII)

68. That Plaintiffs hereby repeat and re-allege each and every allegation of the foregoing Complaint as though more fully set forth herein.

69. That at all times relevant, the Defendants Theil and HII were engaged in a joint venture.

70. That the Defendants provided false and incomplete information in the course of the above described business transaction.

71. That the Defendants intended for the Plaintiffs to rely on the incorrect information or otherwise knew that Plaintiffs would rely on it.

72. That the Defendants failed to exercise reasonable care in obtaining or communicating the information.

73. That the Plaintiffs justifiably relied upon the incorrect and incomplete information.

74. That the Plaintiffs were damaged by the Defendants negligent misrepresentations to the extent of unpaid medical bills and premiums paid by them.

9

## COUNT III: REASONABLE EXPECTATIONS; BREACH OF CONTRACT
### (EVEREST)

75. That Plaintiffs hereby repeat and re-allege each and every allegation of the foregoing Complaint as though more fully set forth herein.

76. That Defendant Linda Thiel was an authorized agent of ASIA, which was a brokerage contracted to sell short term medical policies on behalf of Defendant Everest.

77. That during Defendant Linda Thiel's communications with Plaintiff Marisisa Diaz, she misled Diaz about the terms and coverage of the policies she was buying through omissions and misrepresentations.

78. That these misrepresentations reasonably informed Diaz that she had coverage which, by the actual terms of the policies sold, she did not.

79. That Diaz reasonably relied upon these misrepresentations to her detriment and that of her husband.

80. That Diaz, and thereby her husband, by reason of these misrepresentations, statements and omissions, had a reasonable expectation that included payment of medical expenses incurred, up to an aggregate of $750,000 after meeting a deductible of $7,500.

81. That, in fact, this is how the coverage was marketed and sold by Thiel to Diaz.

82. That Diaz did not know or understand that what she and her husband were being sold was a very limited scheduled benefit policy.

83. That had Diaz known of the limitations of the policy actually purchased, she would not have bought it.

84. That coverage for the medical expenses incurred but not paid by Everest is extended by reason of the Plaintiffs' reasonable expectation of coverage created by authorized agents of Everest.
85. That because the insurance contract has not been paid in accordance with the coverage extended by Plaintiffs' reasonable expectations, Defendant Everest is in breach thereof.
86. That Plaintiffs' have suffered actual damages because of said breach.
87. That Plaintiffs are further entitled to their reasonable attorneys' fees and costs under A.R.S. § 12-341.01.

WHEREFORE, Plaintiffs request judgment against the Defendants Thiel and HII, jointly and severally, on Counts I and II and in favor of Plaintiffs as follows:

A. For an amount of special damages to be determined at trial;
B. For an amount of general damages to be determined at trial;
C. For an award of punitive damages on Count I; and
D. For reasonable attorneys' fees and costs.

On Count III, for an award against Defendant Everest as follows:

A. Finding a contract by reasonable expectations;
B. Finding a breach thereof;
C. Awarding actual damages for said breach; and
D. For an award of reasonable attorneys' fees and costs.

DATED: May 16, 2019.

SURRANO LAW OFFICES

By: s/ Charles J. Surrano, III
Charles J. Surrano, III
John N. Wilborn
7114 E. Stetson Dr., Suite 300
Scottsdale, Arizona  85251
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2019, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Sharon A. Urias
> GREENSPOON MARDER LLP
> 8585 E. Hartford Drive, Suite 700
> Scottsdale, AZ 85255
> sharon.urias@gmlaw.com
> azdocket@gmlaw.com
>
> Garry W. O'Donnell (*Pro Hac Vice*)
> GREENSPOON MARDER LLP
> 2255 Glades Road, Suite 400-E
> Boca Raton, FL 33431
> garry.odonnell@gmlaw.com
>
> Attorneys for Defendants
> Health Plan Intermediaries Holdings, LLC
> and Linda Thiel
>
> Timothy Hyland
> Jordan R. Plitt
> THE CAVANAGH LAW FIRM
> 1850 N. Central Avenue, Suite 2400
> Phoenix, AZ 85004-4527
> thyland@cavanaghlaw.com
> jplitt@cavanaghlaw.com
> Attorneys for Defendant
> Everest Reinsurance Company

s/ Jennie Leetham